**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**TERRY MONTGOMERY and NAWASA
MONTGOMERY**                                                                 **PLAINTIFFS**

**V.**                                                        **CIVIL ACTION NO. 2:12cv7-KS-MTP**

**CITIMORTGAGE, INC. and JOHN DOES 1-5**                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant CitiMortgage, Inc.'s Motion for

Summary Judgment [45] and Motion to Strike Exhibits E, F, G, H and I to Plaintiffs'

Response in Opposition to Defendant's Motion for Summary Judgment ("Motion to

Strike") [58].  Having considered the submissions of the parties, the record and the

applicable law, the Court finds that the Motion to Strike [58] should be granted and that

the Motion for Summary Judgment [45] should be granted in part and denied in part.

## BACKGROUND

Plaintiffs Terry Montgomery and Nawasa Montgomery, husband and wife, assert

numerous state law claims against Defendant CitiMortgage, Inc. ("CitiMortgage")

relating to their efforts to have their mortgage loan payments reduced.  Terry and

Nawasa Montgomery own certain real property and a residence located at 183

Friendship Church Road, Columbia, Mississippi, 39429 (the "Subject Property").  On

November 26, 2007, Plaintiffs pledged the Subject Property as collateral in order to

secure a loan from Citicorp Trust Bank, fsb ("Citicorp") in the principal amount of

$264,009.93.  (*See* Note and Deed of Trust [45-1 at ECF pp. 8-31].)  Plaintiffs' Note

requires monthly mortgage payments in the amount of $2,323.27.  Plaintiffs initially paid

this amount via semi-monthly, automatic drafts from their bank account.

Effective July 1, 2008, Citicorp assigned its right to service the Plaintiffs' loan (that is, to collect payments from the Plaintiffs) to CitiMortgage. In September of 2008, Nawasa Montgomery called CitiMortgage seeking information about having the interest rate on the loan reduced. Mrs. Montgomery was advised to contact CitiMortgage's modification department. In December of 2008, Terry Montgomery also called CitiMortgage with respect to having the interest rate lowered. He was transferred to CitiMortgage's refinance department. Neither of these telephone calls resulted in Plaintiffs' mortgage loan payments being reduced.

The preceding circumstances are largely undisputed by the parties. Many of the circumstances addressed below are in dispute.

CitiMortgage alleges the following pertinent facts based on its business records, which include a Payment History report and Account Notes pertaining to the Plaintiffs' loan. (*See* Doc. No. [45-1 at ECF pp. 35-66].) Plaintiffs[1] contacted CitiMortgage on April 9, 2009 and June 29, 2009, to inquire about hardship assistance. On July 14, 2009, Plaintiffs contacted CitiMortgage in order to stop mortgage payments being deducted from their bank account. On July 22, 2009, Plaintiffs inquired about a modification of their loan pursuant to the Home Affordable Modification Program ("HAMP").[2] On September 28, 2009, Plaintiffs executed a HAMP Hardship Affidavit in

_____

[1] CitiMortgage asserts that it communicated with Terry Montgomery and Nawasa Montgomery at different times, but refers to them together as "Plaintiffs" for ease of reference and because some Account Notes do not specify whether Mr. or Mrs. Montgomery was involved in a particular communication.

[2] HAMP is a federal program designed to assist homeowners who have defaulted on their mortgages, or who are at risk of defaulting, by providing financial incentives to mortgage servicers and lenders to lower mortgage payments through the modification of

order to qualify for loan modification that indicated, *inter alia*, their expenses had increased and their monthly debt payments were excessive. (*See* Doc. No. [45-1 at ECF pp. 67-69].) Plaintiffs further provided via their affidavit that "we have never been delinquent on our mortgage and we feel we deserve a break with CitiMortgage." Effective October 1, 2009, Plaintiffs entered into a trial period plan ("TPP") that required monthly payments of $2,190.47 for October, November and December of 2009. Plaintiffs were required to submit certain documentation in order to qualify for a permanent loan modification under HAMP. Plaintiffs failed to submit the necessary documentation despite CitiMortgage repeatedly contacting them about the deficiencies in their application. Plaintiffs' application was declined on May 25, 2010, for failure to submit the required documentation. Plaintiffs subsequently furnished CitiMortgage certain documents, but on February 8, 2011, their application was denied again because they had insufficient income to qualify for loan modification. Upon being advised of this denial, Plaintiffs indicated that their income had changed and CitiMortgage thus advised them to send in additional documents. The loan modification process was put on hold when Plaintiffs filed this lawsuit.

CitiMortgage also makes the following claims regarding Plaintiffs' payment history under the loan. Plaintiffs did not make a payment for the month of August, 2009. Plaintiffs' payments of $2,190.47 under the TPP for September and October of 2009 were less than the $2,323.27 amount required under the Note. Plaintiffs' December, 2009 payment was late. Plaintiffs' inadequate payments led to a delinquency on their

_____

eligible loans. *See United States v. Morrison*, 713 F.3d 271, 274 (5th Cir. 2013).

account that was never resolved through loan modification.  Plaintiffs have not made

any payments under the loan since August 30, 2010.

The Plaintiffs contend CitiMortgage steered them toward HAMP modification

when they inquired about having their interest rate reduced.  Allegedly, the Plaintiffs did

not know anything about the loan modification process at that time.  Plaintiffs assert that

CitiMortgage should have lowered their interest rate and not led them into loan

modification since they had never missed a mortgage payment or failed to pay on time.

Plaintiffs further assert or admit to the following matters relating to this dispute.

Plaintiffs paid CitiMortgage less than $2,323.27 per month during the trial modification

process.  These reduced payments were made on time.  Plaintiffs never asked

CitiMortgage to stop making automatic withdrawals from their bank account.

CitiMortgage advised the Plaintiffs that it could not debit their account during the

modification process and that the Plaintiffs would have to send in the payments.

Plaintiffs never missed a payment before or during the trial modification.  From July of

2009 forward, CitiMortgage failed to apply any of Plaintiffs' payments (totaling

approximately $28,000.00) to the loan.  In 2010, Plaintiffs received letters from

CitiMortgage that indicated their loan was delinquent and that foreclosure may result if

the overdue amounts were not paid.  Upon receiving the first of these letters, Terry

Montgomery called CitiMortgage and was advised to disregard the letter as it was just

part of the modification process.  Plaintiffs timely submitted all of the information

requested by CitiMortgage during the modification process.  Further, Plaintiffs had to

compile and resend information on several occasions because CitiMortgage could not

keep track of it.  No mortgage payments have been made since October of 2010, when

CitiMortgage stopped making withdrawals from Plaintiffs' bank account.

It appears to be undisputed that CitiMortgage referred the Plaintiffs' loan to foreclosure in October of 2010. It also appears undisputed that foreclosure proceedings have not been finalized since Plaintiffs still reside at the Subject Property.

On December 13, 2011, Plaintiffs filed suit against CitiMortgage in the Circuit Court of Marion County, Mississippi. (*See* Compl. [1-1].) Plaintiffs' Complaint contains the following seven counts: (I) Negligence and Gross Negligence; (II) Negligent or Intentional Infliction of Emotional Distress; (III) Breach of Fiduciary Duty; (IV) Unjust Enrichment; (V) Breach of the Covenant of Good Faith and Fair Dealing; (VI) Negligent, Grossly Negligent and Wanton Failure to Monitor and Train Agents; and (VII) Injunction. On January 17, 2012, CitiMortgage removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332. (*See* Notice of Removal [1].) On March 15, 2013, CitiMortgage filed its Motion for Summary Judgment [45]. This motion has been fully briefed. On May 6, 2013, CitiMortgage filed its Motion to Strike [58]. Plaintiffs have not responded to the Motion to Strike and the time for their response has expired.

## I.    CitiMortgage's Motion to Strike [58]

CitiMortgage contends that Exhibits "E" through "I" to Plaintiffs' Response in Opposition [54] to summary judgment should be stricken as improper summary judgment evidence. Exhibit E [54-5] is a spreadsheet that purportedly shows Plaintiffs' mortgage payment history, as reflected by their bank statements. CitiMortgage argues that Exhibit E is unauthenticated and that neither it nor the bank records it purports to summarize were produced during discovery. Exhibit F [54-6] is an article published by

the Federal Deposit Insurance Corporation addressing unsafe or unsound practices by certain residential mortgage servicers in connection with foreclosure activities. Exhibits G, H and I [54-7 to -9] are media publications concerning the Troubled Asset Relief Program and government bailouts of lending institutions resulting from the 2007-2008 financial crisis. CitiMortgage posits that Exhibits F, G, H and I should be stricken as irrelevant, prejudicial and hearsay evidence.

Plaintiffs' response to the Motion to Strike [58] was due to be filed on or before May 23, 2013. Plaintiffs failed to file their response or request a filing extension by that date. The Court's Local Uniform Civil Rules provide that "[i]f a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed." L.U.Civ.R. 7(b)(3)(E). The grant of the Motion to Strike would leave the Complaint pending. Further, the Court finds that the subject Exhibits are not dispositive of any issue on summary judgment. Therefore, the Motion to Strike [58] will be granted as unopposed.

## II. CitiMortgage's Motion for Summary Judgment [45]

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come

forward with specific facts showing that there is a genuine issue for trial." *Id.* "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), *cert. denied*, 132 S. Ct. 2103 (2012).

### B.    Analysis

*1. Whether Plaintiffs' Negligence-Based Claims Fail as a Matter of Law on the Basis*

<u>that CitiMortgage Did Not Owe the Plaintiffs a Duty</u>

CitiMortgage argues that Plaintiffs' claims under Counts I (negligence and gross negligence) and VI (negligent, grossly negligent and wanton failure to monitor and train agents) of the Complaint fail because it owed no legal duty to the Plaintiffs. "The four elements of negligence include (1) duty, (2) breach of duty, (3) causation, and (4) damages." *Fisher v. Deer*, 942 So. 2d 217, 219 (¶ 6) (Miss. Ct. App. 2006) (citing *Couch v. City of D'Iberville*, 656 So. 2d 146, 150 (Miss. 1995)).[3] CitiMortgage principally relies on the case of *Poppelreiter v. GMAC Mortgage, LLC*, No. 1:11cv8, 2011 WL 6100440 (N.D. Miss. Dec. 7, 2011), in support of its contention that Plaintiffs cannot meet the first required element of a negligence cause of action. According to CitiMortgage, *Poppelreiter* holds that an arms-length transaction, such as a mortgage loan, fails to give rise to legal duties between the parties. (*See* Mem. of Law [46] at p. 11) ("As made clear in *Poppelreiter*, CitiMortgage, as mortgagee, owed no duty to Plaintiffs, the mortgagors.").

CitiMortgage's reading of *Poppelreiter* is not well taken. In *Poppelreiter*, plaintiff mortgagors brought suit against GMAC, the mortgagee, alleging that it "negligently serviced their home mortgage loan and made misrepresentations regarding its loan modification process." 2011 WL 6100440, at *1. In its discussion of law, the court did provide that "[u]nder Mississippi law, [d]uties *to disclose or to act affirmatively* . . . do not arise in arms length transactions or under an ordinary standard of care." *Id.* at *3 (emphasis added; citation and internal quotation marks omitted). However, the court's

---

[3] The Court applies the substantive law of Mississippi in this diversity action. *See Lloyd v. John Deer Co.*, 922 F.2d 1192, 1194 (5th Cir. 1991).

grant of summary judgment in favor of GMAC on plaintiffs' negligence claim was not

based on the absence of a legal duty between the parties. Instead, the court granted

summary judgment due to the lack of evidence showing negligent conduct on the part of

GMAC or damages proximately caused by such conduct. *See id.* at *4-5.[4]

CitiMortgage's misuse of *Poppelreiter* is made clear by the following portion of Judge

Aycock's prior denial of GMAC's motion to dismiss:

> The first obligation of a plaintiff in any negligence case is to first prove
> the existence of a duty. *Enterprise Leasing Co. v. Bardin*, 8 So.3d 866, 868
> (citing *Laurel Yamaha, Inc. v. Freeman*, 956 So.2d 897, 904 (Miss.2007)).
> Whether a duty exists in a negligence case is a question of law to be
> determined by the Court. *Id.* (citing *Brown v. J.J. Ferguson Sand & Gravel
> Co.*, 858 So.2d 129, 131 (Miss.2003)). Under Mississippi law, "[a] contract
> creates a reasonable duty of care in fulfilling one's contractual obligations."
> *River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc.*, 98 F.3d 857, 859
> (5th Cir.1996) (citing *McKinnon v. Batte*, 485 So.2d 295, 298 (Miss.1986)).
> Regarding mortgages, the Mississippi Supreme Court has stated that
> mortgagees and mortgagors "are in a relationship of trust and the mortgagee
> should not be allowed to abuse that relationship." *American Nat. Bank of Iuka
> v. Mitchell*, 359 So.2d 1376, 1380 (Miss.1978), *overruled on other grounds
> by C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss.1992). Moreover,
> mortgagees "at least" owe their mortgagors a "duty of fairness."

*Poppelreiter v. GMAC Mortgage, LLC*, No. 1:11cv8, 2011 WL 2690165, at *3 (N.D.

Miss. July 11, 2011).

Thus, the central flaw in CitiMortgage's legal duty argument is that it conflates the

duty to disclose or act affirmatively (which is relevant in a fiduciary duty analysis),[5] with

the duty to use ordinary or reasonable care (which is the focus on a negligence claim).[6]

---

[4] The *Poppelreiter* plaintiffs failed to oppose GMAC's request for summary judgment.
*See id.* at *1.

[5] *See MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (¶ 32) (Miss. 2006).

[6] *See Triplett v. Dempsey*, 633 So. 2d 1011, 1014 (Miss. 1994).

It is well established under Mississippi law that a negligence claim may be founded on the breach of a legal duty arising from a contract between the parties. *See, e.g.*, *Poppelreiter*, 2011 WL 2690165, at *3; *City of Jackson v. Estate of Stewart*, 908 So. 2d 703, 711 (¶ 40) (Miss. 2005) (providing that it was permissible for the plaintiff to assert breach of contract and negligence claims arising from the same operative facts); *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991) ("[W]hile th[e] duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship . . . ."); *Williams v. Entergy Miss., Inc.*, 19 So. 3d 757, 762 (¶ 21) (Miss. Ct. App. 2008) ("Under Mississippi law, a party may be negligent for failure to properly perform a duty assumed under a contract."). A duty to act reasonably toward another may also arise by virtue of some undertaking regardless of the existence of a legal contract. "[C]ontracts are not the only way in which the law imposes a duty of a care. Whenever a person does some act, the law imposes a duty upon that person to take reasonable care in performing that act." *River Prod. Co. v. Baker Hughes Prod. Tools, Inc.*, 98 F.3d 857, 859 (5th Cir. 1996) (citing *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 245 Miss. 276, 148 So. 2d 199, 201 (Miss. 1962)); *see also Garrett*, 582 So. 2d at 391 (A duty of a care may arise by operation "of the basic rule of the common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to endanger the person or property of others.").

Although CitiMortgage is not identified as the "Lender" under the Plaintiffs' Note or Deed of Trust, it asserts the existence of an "indisputable mortgagor-mortgagee relationship between" the Plaintiffs and itself. (Mem. of Law [46] at p. 11.) Plaintiffs'

positions in opposition to summary judgment are also taken under the view that a debtor-creditor or mortgagor-mortgagee relationship exists between the parties. The Court will accept the parties' positions for purposes of summary judgment.

Given the nature of the parties' relationship, the Court finds that CitiMortgage owed the Plaintiffs a legally enforceable duty, which encompassed the obligation to apply their mortgage payments to the loan in accordance with the terms of the Deed of Trust.[7] *See Poppelreiter*, 2011 WL 2690165, at *3. CitiMortgage was also required to employ due care in the processing of the Plaintiffs' request to lower their mortgage payments and in the resulting loan modification process undertaken by the parties. *See River Prod. Co.*, 98 F.3d at 859. Therefore, the Court denies CitiMortgage's request for summary judgment based on the contention that it owed no legal duty to the Plaintiffs.

### 2. *Whether Plaintiffs Have Put Forth any Evidence of Negligence or Damages*

CitiMortgage asserts that all of Plaintiffs' negligence-based claims fail because they have not and cannot put forth any evidence suggesting that it or its agents acted negligently. The Court disagrees. The following deposition testimony raises a jury issue as to whether CitiMortgage breached a duty of care in its handling of the subject loan modification process:

> A. They [CitiMortgage] never allowed me to talk to the same person. In one instance the lady asked me to fax a paper. While we were on the phone, she received the fax. Thirty minutes later, another lady came in and took over her time slot, and she swore that she never seen the fax, you know.
> And they would connect me from one person to another that didn't know anything about my case, and that went on forever. I mean, during the

---

[7] A deed of trust is a contract. *See Pepper v. Homesales, Inc.*, No. 1:08cv344, 2009 WL 544141, at *6 (S.D. Miss. Mar. 3, 2009).

process I never talked to the same person. I always had to start from scratch. Every time they, you know, did the remodification, I had to always send the same information over and over and over. And I thought that was just so, you know, atrocious.

    . . . .

I feel like I was misled and misguided down the wrong path to a modification when I didn't even qualify, because I hadn't ever missed a payment or been late. All I wanted to do was refinance. I feel like they used a lot of my time and kept sending me down a dead-end-road, and they actually knew or didn't know what they were doing.

(Terry Montgomery Dep. [54-1] 78:8-21, 79:6-12.)

    THE WITNESS: Okay. They forced us into a modification when we didn't even qualify for a modification. They gave us the run-around. They were sending out conflicting information.
    When we compiled all of our information and sent it in, a lot of our personal information, then they could not find it. Then we had to go back and compile it again and send it in time after time after time. They stated that we did not make the deadline when we know we made the deadline, and we have, you know, just evidence that we did make the deadline.
    On one occasion we talked to one guy, and he actually -- with CitiMortgage, and he actually encouraged us to get an attorney.

(Nawasa Montgomery Dep. [54-2] 57:17-58:7.)

CitiMortgage has submitted an affidavit from Sherry Romine, a Business Operations Analyst, stating "that Plaintiffs never submitted all the necessary paperwork to be fully evaluated for a permanent HAMP modification", and that "CitiMortgage contacted Plaintiffs numerous times regarding the deficiencies in their application . . . ." (Romine Aff. [45-1] at ¶ 19.) "[A] genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise." *Ill. Cent. R.R. Co. v. Harried*, 681 F. Supp. 2d 772, 775 (S.D. Miss. 2009) (citing *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 643 (Miss.1996)). Thus, the

conflict between Ms. Romine's affidavit and the above-quoted deposition testimony only undermines CitiMortgage's request for summary judgment.

The summary judgment records also presents a genuine issue of material fact regarding whether CitiMortgage complied with its contractual duties under the Deed of Trust in handling Plaintiffs' mortgage payments. The Deed of Trust provides in pertinent part: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under Note; (b) principal due under the Note; (c) amounts due under Section 3." (Doc. No. [45-1 at ECF p. 19].) Both Plaintiffs testified at deposition that they never stopped making payments during the loan modification process. (*See* Terry Montgomery Dep. [54-1] 34:19-35:1, 59:5-9; Nawasa Montgomery Dep. [54-2] 21:7-15, 27:7-13, 33:8-14.) Reading between the lines of CitiMortgage's request for summary judgment, it appears to concede that Plaintiffs made mortgage payments totaling at least $26,319.21 between August, 2009 and August, 2010. Yet, CitiMortgage's Payment History report pertaining to the Plaintiffs' loan, which is incomprehensible in many respects, seems to show the principal due on the loan remaining constant from July of 2009 forward. Viewing this evidence and the resulting inferences in the light most favorable to the Plaintiffs, the Court determines that a jury should consider CitiMortgage's alleged mishandling of the Plaintiffs' mortgage payments.

Putting aside the issue of damages for emotional distress, which will be addressed in the next section of this opinion, the Court also rejects CitiMortgage's contention that there is insufficient evidence on the fourth required element of negligence to preclude summary judgment. In a 2010 opinion, the Mississippi Supreme

-13-

Court provided the following guidance for a trial court's consideration of damages:

> Damages must be shown with reasonable certainty and should not be left to only speculation and conjecture. *Flight Line, Inc. v. Tanksley*, 608 So.2d 1149, 1164 (Miss.1992) (citations omitted). However, a plaintiff should not be deprived of the right to recover simply because of the inability to prove with absolute certainty the extent of the loss. *Id.* (citations omitted). "'If the damage is certain, the fact that its extent is uncertain does not prevent a recovery.'" *Id.* (citations omitted). Further, "[t]he amount of damages to be awarded to an injured litigant is primarily a question of fact for the jury." *Edwards v. Ellis*, 478 So.2d 282, 289 (Miss.1985) (citations omitted).

*Kennedy v. Ill. Cent. R. Co.*, 30 So. 3d 333, 337 (¶ 10) (Miss. 2010).

Both Plaintiffs indicated at deposition that they suffered lost wages because they had to take time off from work to deal with issues relating to this action. (*See* Terry Montgomery Dep. [54-1] 81:2-6; Nawasa Montgomery Dep. [54-2] 60:10-25.) Both Plaintiffs further testified that they were denied loans and their ability to obtain credit was impaired as a result of CitiMortgage reporting that they were delinquent when they had never missed a payment. (*See* Terry Montgomery Dep. [54-1] 58:4-59:9, 81:20-82:18; Nawasa Montgomery Dep. [54-2] 18:25-21:24, 63:1-17.) There is also the issue of the principal on the Plaintiffs' loan staying constant from July, 2009 forward despite Plaintiffs paying CitiMortgage more than $20,000 between August, 2009 and August, 2010. Although the extent to which Plaintiffs have been damaged is far from certain, enough facts are in dispute to allow the preceding damage claims to be presented to the finder of fact at trial. *See Kennedy*, 30 So. 3d at 337 (¶ 10); *see also Powell v. Liberty Mut. Ins. Co.*, No. 2:05cv79, 2007 WL 1234974, at *9 (S.D. Miss. Apr. 26, 2007) (finding a jury issue presented as to the existence of damages notwithstanding the weakness of plaintiff's proof on the matter–consisting of plaintiff's affidavit and

deposition testimony–since it was the jury's task to determine the credibility of the evidence); *Dowdy v. Palmer*, No. 1:04cv535, 2006 WL 149063, at *3 (S.D. Miss. Jan. 19, 2006) (denying summary judgment on the issue of compensatory damages where the plaintiff claimed that her credit rating was negatively affected by a pending collection suit).

Summary judgment on Count I of the Complaint (negligence and gross negligence) will be denied since there is sufficient evidence to proceed to trial on each element of negligence challenged by CitiMortgage.[8] On the other hand, summary judgment is due on Count VI (negligent, grossly negligent and wanton failure to monitor and train agents).

A claim of failure to supervise (i.e., monitor) or train also requires a showing of duty, breach, causation and damages. *See, e.g., Cuevas v. T & J's Last Minute Seafood Express*, 1:10CV104, 2011 WL 1898919, at *3 (S.D. Miss. May 13, 2011); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (¶ 45) (Miss. 2005). CitiMortgage asserts that Plaintiffs have failed to present any evidence showing that it did not properly supervise or train its employees. The Court agrees and finds nothing in the record, other than speculation and conjecture,[9] aimed at establishing

---

[8] CitiMortgage has not addressed the element of causation outside of the context of Plaintiffs' claims for emotional distress damages. If the moving party fails to show the absence of a genuine issue of material fact, "summary judgment must be denied–even if the nonmoving party has not responded to the motion." *Johnson v. La. (Bd. of Trustees for State Colls. & Univs.)*, 757 F.2d 698, 708 (5th Cir. 1985) (citations omitted). Of course, Plaintiffs must submit evidence on each essential element of negligence in order to prevail at trial.

[9] "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute

CitiMortgage's liability pursuant to Count VI of the Complaint. *Cf. Estate of Guillotte v. Delta Health Group, Inc.*, 5 So. 3d 393, 410 (¶ 43), 411 (¶ 46) (Miss. 2009) (affirming grant of summary judgment on corporate negligence claim where no evidence was presented regarding the defendants' duty as to "supervision of staff, training of staff, and documentation procedures" or "breach of the standard of care").

*3. Whether Plaintiffs' Emotional Distress Claims Must Be Dismissed*

*a. Intentional Infliction of Emotional Distress*

An action for intentional infliction of emotional distress requires the defendant's "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 23) (Miss. Ct. App. 2004) (citation omitted). Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities. *Id.* The claimant must show that the defendant intentionally and maliciously sought to do him harm. *Sumler v. East Ford, Inc.*, 915 So. 2d 1081, 1089 (¶ 26) (Miss. Ct. App. 2005) (citing *Morgan v. Greenwaldt*, 786 So. 2d 1037 (¶ 24) (Miss. 2001)). "[M]eeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Frascogna v. Wells Fargo Bank, N.A.*, No. 3:07cv96, 2009 WL 2843284, at *8 (S.D. Miss. Aug. 31, 2009) (citations omitted).

The record in this case fails to evidence conduct on the part of CitiMortgage that would permit a reasonable jury to conclude that CitiMortgage's handling of the Plaintiffs'

---

for specific facts showing a genuine issue for trial." *Oliver*, 276 F.3d at 744.

loan was so outrageous and extreme in character as to be intolerable in a civilized society.  At most, fact issues exist as to whether CitiMortgage mishandled or mismanaged Plaintiffs' request to lower their interest rate, the resulting loan modification process and Plaintiffs' mortgage payments.  Such potentially negligent conduct fails to rise to the extreme level of wrongdoing necessary for Plaintiffs to proceed on a claim of intentional infliction of emotional distress.  *Cf. Stewart v. GMAC Mortgage, LLC*, No. 2:10cv149, 2011 WL 1296887, at *10 (S.D. Miss. Mar. 31, 2011) (finding that the defendant's alleged inequitable conduct toward the plaintiff during the foreclosure process failed to support a claim); *Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 788 (S.D. Miss. 2008) (same).  Therefore, this claim will be dismissed.

### b.  Negligent Infliction of Emotional Distress

Mental anguish or emotional distress "'is a nebulous concept and requires substantial proof for recovery.'"  *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 64 (¶ 27) (Miss. 2004) (quoting *Morrison v. Means*, 680 So. 2d 803, 805 (Miss. 1996)).  Where ordinary negligence is at issue, "the plaintiff must prove some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant."  *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (¶ 40) (Miss. 2001) (citations omitted).  There is a relaxed or "permissive" view recognized in Mississippi under which a plaintiff may recover for emotional distress caused by ordinary negligence as long as the injury was reasonably foreseeable by the tortfeasor.  *Id.* at 1208 (¶ 41).  However, this Court will apply the more stringent view, requiring proof of demonstrable physical or mental injury, in this case since it has been more consistently applied by federal district courts in Mississippi

and the Mississippi Supreme Court. *See, e.g.*, *Burton v. Coahoma Cmty. Coll.*, No. 2:11cv129, 2012 WL 2254169, at *5-6 (N.D. Miss. June 15, 2012), *aff'd*, 505 Fed. Appx. 318 (5th Cir. 2013); *Stewart*, 2011 WL 1296887, at *10; *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 4 (¶ 11) (Miss. 2007) (citing cases from 2004, 2002, 2001 and 2000). Mr. and Mrs. Montgomery's claims of emotional distress will be addressed separately.

Mr. Montgomery testified that he had "lost a lot of sleep" worrying about whether he would be kicked out of his house and that there was a lot of stress on his marriage and his job as a result of CitiMortgage's acts or omissions. (Terry Montgomery Dep. [54-1] 79:17-19, 80:9-16.) He also had "[h]eadaches maybe from anxiety . . . ." (Terry Montgomery Dep. [54-1] 81:11.) These statements fail to support an award of damages for emotional distress under Mississippi law. *See Cmty. Bank, Ellisville, Miss. v. Courtney*, 884 So. 2d 767, 776 (¶ 29) (Miss. 2004) (finding that plaintiff's testimony regarding stomach problems he purportedly developed did not evidence any demonstrable harm); *Wilson*, 883 So. 2d at 65 (¶ 32) ("[V]ague testimony about loss of sleep and worry . . . [is] insufficient to support an instruction or an award of damages for emotional distress."); *Ill. Cent. R.R. Co. v. Hawkins*, 830 So. 2d 1162, 1175 (¶ 27) (Miss. 2002) ("This Court has stated repeatedly that testimony regarding sleeplessness and nightmares is insufficient to support an instruction or award of damages for emotional distress.") (citations omitted); *Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 475-76 (¶¶ 49-54) (Miss. Ct. App. 2010) (affirming the trial court's grant of summary judgment on plaintiff's emotional distress claims asserting embarrassment at work and marital trouble as a result of plaintiff's financial situation).

Mr. Montgomery also testified that his blood pressure went up "during this process . . . ."  (Terry Montgomery Dep. [54-1] 80:9-12.)  Mr. Montgomery seemed to contend that he discovered this problem during one of his annual checkups.  (Terry Montgomery Dep. [54-1] 80:9-21.)  However, he also testified that the physician performing the checkup did not specifically state that his high blood pressure was related to the foreclosure proceedings; that he was managing his high blood pressure through diet and exercise; that he had no medical bills relating to the lawsuit; that he was not taking any medication; that he was not being treated for any condition; and that he had never been treated for anxiety or depression.  (Terry Montgomery Dep. [54-1] 80:11-16, 81:13-15, 84:1-15, 87:5-11.)  On the whole, the record evidences no medical treatment for Mr. Montgomery's blood pressure or purported mental injuries and there is an absence of "'substantial proof' of emotional harm . . . ."  *Evans*, 36 So. 3d at 476 (¶ 53) ("Evans presents no medical or psychological treatment."); *see also Edmonds v. Beneficial Miss., Inc.*, No. 3:04cv827, 2005 WL 2361913, at *3 (S.D. Miss. Sept. 13, 2005) (finding that plaintiff's allegations regarding his blood pressure failed to constitute sufficient proof of harm), *aff'd*, 212 Fed. Appx. 334 (5th Cir. 2007); *Hawkins*, 830 So. 2d at 1175 (¶ 27) (holding that the plaintiff's vague statements concerning visits to a psychiatrist could not support damages for emotional distress).  Accordingly, summary judgment will be granted in favor of CitiMortgage on Mr. Montgomery's claim of negligent infliction of emotional distress.

Nawasa Montgomery's deposition testimony regarding her stress, embarrassment and not being able to sleep is just as ineffectual as Mr. Montgomery's testimony regarding the same for purposes of recovery of emotional distress damages.

Mrs. Montgomery's statements regarding medical treatment relating to emotional distress necessitate further inquiry. Mrs. Montgomery stated that she was hospitalized at some point in 2012 "for heart pains." (Nawasa Montgomery Dep. [54-2] 59:1-22.) Mrs. Montgomery could not recall the names of the doctors at the hospital. Mrs. Montgomery testified that she saw "Dr. Johnson" for her emotional injuries and that he wanted to put her on blood pressure medication. (Nawasa Montgomery Dep. [54-2] 58:22-59:7, 64:12-20.)[10] Mrs. Montgomery was not taking any blood pressure medication and was trying to manage the situation on her own. (Nawasa Montgomery Dep. [54-2] 64:15-18.) Dr. Johnson related Mrs. Montgomery's blood pressure and other medical issues to the stress that was in her life. (Nawasa Montgomery Dep. [54-2] 64:24-65:2.) Mrs. Montgomery further testified that her damage claim included medical bills and physical pain in her chest and left arm. (Nawasa Montgomery Dep. [54-2] 61:19-62:4.)

Where there is insufficient evidence to support a claim of intentional infliction of emotional distress, such as in this case, recovery under a negligence theory is possible "if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession." *Paz*, 949 So. 2d at 4 (¶ 10). Mrs. Montgomery clearly alleges receiving medical treatment relating to her emotional distress. The problem is that no medical evidence, such as medical records or testimony from a

---

[10] Plaintiffs' interrogatory responses provide that Mrs. Montgomery "has seen Michael W. Johnson, NP" in connection with her emotional distress and mental anguish. (Doc. No. [45-4 at ECF p. 6].)

treating physician, has been presented in support of this claim.  Moreover, no showing

has been made that Mrs. Montgomery is competent to testify as to medical causation.

Thus, the above-referenced deposition testimony fails to preclude summary judgment

on Mrs. Montgomery's allegation of negligent infliction of emotional distress.  *See*

*Marchbanks v. Dolgencorp, Inc.*, No. 1:07cv299, 2008 WL 5050136, at *8 (N.D. Miss.

Nov. 20, 2008) (granting summary on negligent infliction claim in the absence of

medical testimony supporting plaintiff's allegations); *Little v. K & B. Miss. Corp.*, No.

3:06cv501, 2007 WL 2417353, at *8 (S.D. Miss. Aug. 27,  2007) (same result in the

absence of medical testimony or records); *Adams v. David's Bridal, Inc.*, No. 3:06cv130,

2007 WL 805663, at *6 (S.D. Miss. Mar. 14, 2007) (same); *cf. Leaf River Forest Prods.,*

*Inc. v. Ferguson*, 662 So. 2d 648, 658 (Miss. 1995) ("Certainly, if one is to recover for

emotional distress predicated on potential future illness there must be substantial proof

of exposure *and medical evidence* that would indicate possible future illness.")

(emphasis added).

### 4.  Whether Plaintiffs' Claim for Breach of Fiduciary Duty Fails as a Matter of Law

"The Mississippi Supreme Court 'has never held that the relationship between a

mortgagor and mortgagee is a fiduciary one.'"  *Kirby v. Bank of Am., N.A.*, 2:09cv182,

2012 WL 1067944, at *6 (S.D. Miss. Mar. 29, 2012) (quoting *Hopewell Enters., Inc. v.*

*Trustmark Nat'l Bank*, 680 So. 2d 812, 816 (Miss. 1996)).  "[T]he power to foreclose on

a security interest does not, without more, create a fiduciary relationship."  *Hartman v.*

*McInnis*, 996 So. 2d 704, 708 (¶ 10) (Miss. 2007) (citation omitted).  Mississippi courts

do not ordinarily impress fiduciary duties on parties to an arms-length transaction since

the parties usually have divergent interests.  *See Dominquez v. Palmer*, 970 So. 2d 737,

742 (¶ 26) (Miss. Ct. App. 2007) (citations omitted).  The party asserting the existence of a fiduciary relationship has a "clear and convincing" burden of proof.  *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 270 (¶ 37) (Miss. 1999) (citing *Peoples Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1358 (Miss. 1995)).

A fiduciary duty may be found to arise from a contractual relationship if the following four factors are met:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 101 (¶ 17) (Miss. 2008) (citations omitted).  Plaintiffs contend that the first two factors are met in light of CitiMortgage accepting a government bailout.  CitiMortgage purportedly began acting on behalf of the mortgagor and mortgagee when it accepted federal funds intended to serve the common interest of the "nation in keeping people in their homes, paying their mortgages."  (Pls.' Resp. in Opp. [54] at pp. 22-23.)  The Court fails to discern how CitiMortgage's receipt of federal funds caused the subject debtor-creditor relationship to morph into a fiduciary one.  The obligations between the parties are principally dictated by the Note and Deed of Trust, and no claim is made that these instruments were altered or were required to be altered as a result of the bailout.  Even assuming, *arguendo*, the sufficiency of Plaintiffs' novel legal theory, their fiduciary duty claim fails on the last two of the above-quoted elements.

Other than arguments of counsel, which do not preclude summary judgment,[11] the record fails to show that the Plaintiffs placed any degree of "trust" or confidence in CitiMortgage beyond that which a borrower ordinarily places in a lender. Evidence of any cognizable "dominion or control" by CitiMortgage over the Plaintiffs is also lacking. The fact that CitiMortgage has the ability to foreclose on the Plaintiffs' residence does not suffice since that is the norm in any mortgagor-mortgagee relationship. Furthermore, Plaintiffs have shown substantial wherewithal and sophistication by preventing CitiMortgage from foreclosing on the Subject Property despite the fact that no mortgage payments have been made since the fall of 2010. *Cf. Wilson v. Ameriquest Mortgage Co.*, No. 5:05cv122, 2006 WL 2594522, at *3 (S.D. Miss. Sept. 8, 2006) (determining that plaintiffs' sophistication weighed against a finding that they were dominated or controlled by the defendant mortgage lender).

Simply put, "there is no evidence that this relationship moved beyond a mortgagor-mortgagee relationship", and thus, it is "not a fiduciary relationship as a matter of law." *Burgess v. Bankplus*, 830 So. 2d 1223, 1228 (¶ 11) (Miss. 2002). In the absence of a duty there can be no breach. Accordingly, Plaintiffs' breach of fiduciary duty claim will be dismissed.

### 5. Whether Summary Judgment is Due on Plaintiffs' Unjust Enrichment Claim

"An unjust-enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to equity and good conscience."

---

[11] *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F. Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).

*Langham v. Behnen*, 39 So. 3d 970, 976 (¶ 14) (Miss. Ct. App. 2010) (quoting *1704 21st Ave., Ltd. v. City of Gulfport*, 988 So. 2d 412, 416 (¶ 10) (Miss. Ct. App. 2008)) (internal quotation marks omitted). Unjust enrichment applies "where no legal contract exists" and where "the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (¶ 14) (Miss. 2012) (citing *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)). For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him. *See id.*

CitiMortgage contends that the theory of unjust enrichment is inapplicable to this case because its actions with respect to the Plaintiffs were governed by legal contracts, the Note and Deed of Trust. Plaintiffs' opposition to summary judgment ignores this argument and once again raises the issue of the federal government's bailout of CitiMortgage. The Court finds CitiMortgage's request for dismissal well taken (and CitiMortgage's receipt of government funds irrelevant) since the existence of an actual contract precludes any claim for unjust enrichment, which is based on a contract implied-in-law. *See, e.g.*, *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 453 (S.D. Miss. 2010); *Pepper*, 2009 WL 544141, at *6; *Mayer v. Angus*, 83 So. 3d 444, 451 (¶ 24) (Miss. Ct. App. 2012). Thus, CitiMortgage is entitled to summary judgment as a matter of law on Plaintiffs' claim of unjust enrichment.

*6. Whether Plaintiffs May Proceed on Their Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing*

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 998 (¶ 11) (Miss. 2008) (citing *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989)). Good faith has been described as "'faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.'" *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (¶ 51) (Miss. 2004) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Id.* Bad judgment or negligence does not constitute bad faith. *Id.* Instead, "bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (¶ 8) (Miss. Ct. App. 2003) (citation and internal quotation marks omitted).

Plaintiffs' chief authority cited in opposition to summary judgment on their claim for breach of the implied covenant of good faith and fair dealing is *Cenac v. Murry*. In that case, Murry was found to have breached the covenant by engaging in the following conduct in order to force a forfeiture of a contract for sale of a country store: harassing the Cenacs and store customers by lurking around the store with a video camera; threatening, insulting and mocking the Cenacs; leaving a dead cat near the property line; attempting to listen to telephone conversations on the pay phone at the front of the store; calling the store or the Cenacs' residence and hanging up as soon as anyone answered; and firing guns at the Cenacs. *See Cenac*, 609 So. 2d at 1262-67, 1272-73.

Conduct of the sort found actionable by the Mississippi Supreme Court in *Cenac* is noticeably absent from the record in this case. Viewing the summary judgment

evidence in the light most favorable to the Plaintiffs, the Court only finds jury issues as to CitiMortgage's alleged negligence in its dealings with the Plaintiffs. No showing of "conscious wrongdoing" motivated by any "dishonest purpose" has been made. *Lippincott*, 856 So. 2d at 468 (¶¶ 8-9) (affirming the trial court's grant of summary judgment where each fact allegation made by the plaintiff amounted to mere negligence); *see also Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 837 (S.D. Miss. 2011) (dismissing good faith and fair dealing claim alleging merely negligent conduct). Consequently, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

### *7. Whether Plaintiffs' Request for an Injunction Must Be Dismissed*

CitiMortgage claims that Plaintiffs' request for injunctive relief fails because all of their other claims are due to be dismissed. No challenge to Plaintiffs' ability to meet the specific elements required for a grant of injunctive relief is made. Pursuant to the logic of CitiMortgage, this request for dismissal will be denied given the Court's ruling as to summary judgment on Count I of the Complaint.

### **CONCLUSION**

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that CitiMortgage's Motion to Strike [58] is granted.

IT IS FURTHER ORDERED AND ADJUDGED that CitiMortgage's Motion for Summary Judgment [45] is granted in part and denied in part. The claims asserted by the Plaintiffs under Counts II, III, IV, V and VI of the Complaint [1-1] are dismissed with prejudice. The claims asserted under Counts I and VII remain pending.

SO ORDERED AND ADJUDGED this the 8th day of July, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE